RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0069p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CORY COLVIN,

        *Petitioner-Appellee,*

    *v.*

No. 08-4353

MICHAEL SHEETS, Warden, Ross Correctional
Institution,

        *Respondent-Appellant.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 06-00681—John D. Holschuh, District Judge.

Argued: January 19, 2010

Decided and Filed: March 12, 2010

Before: SUHRHEINRICH, McKEAGUE, and KETHLEDGE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Elizabeth Ann Matune, OFFICE OF THE OHIO ATTORNEY GENERAL,
Columbus, Ohio, for Appellant. Dennis C. Belli, Columbus, Ohio, for Appellee.
**ON BRIEF:** Elizabeth Ann Matune, OFFICE OF THE OHIO ATTORNEY
GENERAL, Columbus, Ohio, for Appellant. Dennis C. Belli, Columbus, Ohio, for
Appellee.

_____

## OPINION

_____

      SUHRHEINRICH, Circuit Judge. The Double Jeopardy Clause of the Fifth and
Fourteenth Amendments bars retrial following a declaration of mistrial unless the
defendant consented to the mistrial or there was a "manifest necessity" for the mistrial.
In this habeas appeal brought under 28 U.S.C. § 2244, Respondent Michael Sheets

challenges the district court's conclusion that the state court unreasonably applied Supreme Court precedent when it determined that the state trial court's declaration of a mistrial was manifestly necessary and therefore not a violation of Colvin's Fifth Amendment rights. We REVERSE.

## I. Background

## A. State Trial Proceedings

Colvin was indicted in September 2001, on one count for the crime of felonious assault in violation of Ohio Revised Code Section 2903.11, with specifications, one count for the crime of attempted murder in violation of Ohio Revised Code Section 2923.11, with specifications, and two counts for the crime of having a weapon while under a disability in violation of Ohio Revised Code Section 2923.13.[1] Colvin pleaded not guilty. Colvin waived a jury trial as to the two counts of possessing a weapon while under a disability, but proceeded to trial on the attempted murder and felonious assault charges in March 2003. Petitioner's co-defendant accepted a plea bargain during the course of the trial and testified against Colvin. The jury was unable to reach a verdict, and the trial court declared a mistrial.

The case then proceeded to retrial in November 2003. Prior to the retrial, the trial judge, defense counsel, and prosecutor agreed that the parties would not refer to the hung jury. Instead, it was agreed that any reference to testimony in the first trial for impeachment purposes would be characterized as "testimony in a prior proceeding."

However, during closing argument, defense counsel stated:

Reality is the State cannot prove this case beyond a reasonable doubt. The State cannot prove his case beyond a reasonable doubt. They don't have it. It's not there. Tried before. They couldn't convince the jury then and they can't do it now.

---

[1] The underlying facts are set out in the opinion of the Ohio Court of Appeals. *See State v. Colvin*, No 04AP-421, 2005 WL704818 (Mar. 29, 2005).

The prosecutor objected and the following discussion took place out of the hearing of the jury:

> THE COURT: What are you doing?
>
> [DEFENSE COUNSEL]: I apologize, Your Honor.
>
> THE COURT: Couldn't convince them then. What the hell do you think that kind of impression is going to leave with this jury? We talked about this ahead of time that we were not going to talk about the fact that it was a hung jury the last time. What the heck do you think you've just told these people?
>
> [DEFENSE CO-COUNSEL]: I don't think she told the jury it was a hung jury, Your Honor.
>
> THE COURT: Couldn't reach a verdict the last time. Read it.
>
> [Statement is read by court reporter.]
>
> [DEFENSE CO-COUNSEL]: Didn't say the jury was hung, Judge.
>
> [DEFENSE COUNSEL]: I apologize.
>
> THE COURT: What the heck? How could you interpret that other than that? They couldn't convince them the last time.
>
> [DEFENSE CO-COUNSEL]: I don't know, Your Honor.
>
> THE COURT: Then why are we here a second time. They're going to go back and speculate that we didn't do it the last time. Well gee whiz. Jump in here.
>
> [PROSECUTOR]: It's so incredibly prejudiced, the fairness of this case. I cannot even --
>
> THE COURT: I can't believe this.
>
> [PROSECUTOR]:-express. This is why I addressed this well before we did voir dire, so this would not be a part of anything because I did not want to taint this and have a third trial on this case. I'm not sure what kind of curative instruction you can give.
>
> THE COURT: Without telling what the heck happened the last time. How in the heck do I cure it by just saying oh, just don't pay any attention to that? It's already done. It's already said. In order to explain to them or to make any sense out of any curative instruction I've got to tell them what the hell happened the last time so that we can understand

how this curative instruction makes any sense. I don't know about you, I can't see it.

[DEFENSE CO-COUNSEL]: If I could, Your Honor, the jury already knows that there was a previous trial in this case.

THE COURT: Right.

[DEFENSE CO-COUNSEL]: I think instructing--providing a curative instruction to the jury that they're not to consider the outcome of any other proceedings in reaching a verdict in this case would be appropriate.

THE COURT: I don't think that solves it. What do you think?

> [PROSECUTOR]: No. I think that that's the bear [sic] minimum. You can't tell her that she was mistaken because she's not and that would be prejudiced to the defense in putting some kind of impunity on that.

THE COURT: I'm taking the jury out.

The jury was removed from the courtroom and argument continued:

THE COURT: I don't frankly think there's any way to fix it. What do you think?

[PROSECUTOR]: Well, my desire is to try and carve out some way to fix it, but at this moment it escapes me as to how we can give an instruction that would unring the bell in a manner that would then not be prejudicial to the defense because you can't disparage [defense counsel] for making that statement or somehow imply that her statement was wrong without hurting the fairness to their side. And I think at this point now they knew, I agree with [defense co-counsel] in saying that they were aware that there was prior testimony or at best a trial. They can probably very logically conclude that there was a prior trial because the numbers of witnesses have said yeah, I testified before.

But to say that at this point couldn't convince the jury last time, I don't think that those 12 people individually or as a group are going to be able to say well, you know, didn't reach a decision, they hung.

THE COURT: We can't either.

[PROSECUTOR]: Or we'll give you the option of saying we don't have to, we have an easy out because that's what happened the last time as well as being something we had said earlier we were not going to talk about and it comes up at the worst possible moment.

[DEFENSE CO-COUNSEL]: Your Honor, if I could just briefly. As we understood the Court's ruling prior to trial and we're certainly cognizant

of that, the Court's ruling was we were not to instruct the jury there was a hung jury or that they were somehow bound by the decisions of any previous proceedings. The defense did not say that. [Defense counsel] did not say that in her closing remarks. And simply put, there's not-there's no need to unring the bell. To the extent that there might be any confusion on the part of the jury at this point, a curative instruction which is the preferred remedy as I understand it for the Court of Appeals in any situation where there's confusion to the jury, a curative instruction would be the appropriate remedy at this point.

The jury can be instructed that they are not to be bound by the outcome of any prior proceedings. That doesn't tell the jury there was a conviction, a mistrial, or an acquittal. It doesn't tell them anything about the previous proceedings. We have not told them what the jury verdict was or was not in a previous proceeding. And what they heard was what they already knew which was there was a prior trial because we've been talking about it for three days, Your Honor.

So a curative instruction, we submit, would be the appropriate remedy. We certainly did not intentionally violate any orders of this Court. [DEFENSE COUNSEL], I know, did not do that. And a curative instruction will cure any potential confusions the Court is concerned about, Judge.

THE COURT: Well, you know, whether it was intentional or not--I don't believe it was intentional, but it's kind of a deal if I drive my car down the street and I hit another car, whether it's an accident or I do it on purpose, the effect is we've got a bunged [sic] up car. And what we have right now is a screwed up case. What else do you want to say, [PROSECUTOR]?

[PROSECUTOR]: I don't disagree with [defense co-counsel] in the fact that the jury can easily conclude that there was another trial. I don't think that hurts either side of the fairness of the trial. But I do not--I cannot disagree stronger that this jury can make any conclusion other than the jury hung last time. We've talked repeatedly since voir dire. The State has, the defense has. And State having to meet a burden of proof, the State having to prove everything. We had to prove all those elements.

She suggested we didn't do it last time and here we are now. I don't think there's any group of people that you can pick as 12 or somebody not going to make that conclusion. So I think that that's what I understand making that position as an argument. I think the logic of that escapes me.

[DEFENSE CO-COUNSEL]: If I could, Your Honor, the reason it's not just an argument, it's a good judgment argument. This jury knows that

they're [sic] the second jury on this case. We didn't add anything to the body of knowledge. It was just it's [sic] argument, it's [sic] argument that we understood and certainly [Defense Counsel] understood to be within the confines of this Court's order.

[THE COURT]: No, it isn't within the confines of the Court. Yes, we did agree that we could talk about the fact that there was a prior case. We all agreed that. No, we never got to the point of saying they couldn't do it the last time and you may have trouble, too. No. That was not a part of the original agreement. And you can argue till the cows come home, but that is not a part of the original agreement.

No one ever disputed the fact that you could talk about there being a prior case. We have talked about it ad nauseam in here that there was a prior case and they testified before and how they testified and looking at the transcripts and all that. That has nothing to do with the issue here.

What the issue is here is the fact that there's [sic] the jury is aware now that the last time they couldn't handle the evidence and couldn't come back with a verdict and by God here we are again. That's exactly the impression I have and I'm sure [the prosecutor] is going to--is on the same page.

[PROSECUTOR]: Absolutely, Your Honor.

[DEFENSE CO-COUNSEL]: Judge, with all due respect, that jury already thinks that. They know they're the second jury in this case, Judge.

THE COURT: They don't know why.

[PROSECUTOR]: And there are--

[DEFENSE CO-COUNSEL]: Precisely.

[PROSECUTOR]:--a number of reasons why there's [sic] a second trial.

THE COURT: There could have been a mistrial the last time. It very easily could have been a mistrial. Could have been something that we couldn't get beyond. It could have been a mistrial, in addition to being a hung jury. There could be a variety of reasons why this thing didn't go. But the fact that they couldn't reach a verdict the last time, there's only one way to go with that and that is well gee whiz, we can't do it either.

I declare a mistrial. I'll tell the jury.

A third jury trial was held.  The trial judge denied Colvin's motion to dismiss on double jeopardy grounds.  All parties adhered to the original agreement not to refer to the hung jury.  Colvin was found guilty of attempted murder and felonious assault with firearm and drive-by shooting specifications.  The State elected to have Colvin sentenced on the attempted murder charge, and the trial court sentenced Colvin to an aggregate fourteen years of incarceration.

## B.  State Appellate Proceedings

Colvin appealed.   Citing *Arizona v. Washington*, 434 U.S. 497 (1978), and *United States v. Perez*, 9 Wheat. 579 (1824), the Ohio Court of Appeals upheld the trial court's ruling.  *State v. Colvin*,  No. 04AP-421, 2005 WL704818, at *10 (Ohio Ct. App. Mar. 29, 2005).   It stated in relevant part:

> In the present case, defense counsel up-ended the level playing field by stating that the state could not prove its case to this jury, just as the state was unable to prove its case with the previous jury.
> . . . .
>
> In reviewing the record in the present case, this court finds that the trial judge in the instant matter did not abuse her discretion in granting a mistrial. The statement by defense counsel was improper, and it violated the prior agreement entered into between the court and counsel. Second, the comment was prejudicial to the state. Third, the trial judge did consider other alternatives. The prosecuting attorney was not able to verbalize an appropriate potential instruction, and the trial judge did not agree with the statements made by defense counsel that the prejudicial effect of defense counsel's statement could be removed. Again, as Justice Black had stated, a defendant's right to have his trial completed by a particular tribunal must in some cases be subordinated to the public's interest in fair trials designed to end in just judgments. Upon review, this court finds that the granting of a mistrial was appropriate
> . . . .

*State v. Colvin*, No. 04AP-421, 2005 WL704818, at *9-10 (Ohio Ct. App. March 29, 2005).

Colvin appealed to the Ohio Supreme Court, which remanded on an unrelated sentencing question. The trial court resentenced Colvin to the same sentence previously imposed. Colvin then filed this federal habeas petition.

## C. Federal Habeas Proceedings

## 1. Magistrate's Report and Recommendation

The issue was initially reviewed by a magistrate judge, who recommended that the state courts did not unreasonably apply federal law in concluding that there was a manifest necessity for a mistrial. The magistrate judge stated in pertinent part:

> Here, the trial judge removed the jury and heard the arguments of counsel regarding the effect of defense counsel's implicit argument that this jury should acquit because a previous jury heard the evidence and had been unable to unanimously conclude beyond a reasonable doubt that Colvin committed murder. Counsel knew that the trial judge was at least leaning toward declaring a mistrial. . . . Both the prosecutor and defense counsel made suggestions regarding a curative instruction. The trial judge considered and rejected a curative instruction. In her opinion, the bell had been rung. The jurors had heard defense counsel's argument that a previous jury had not convicted, so they also should not. The trial judge told counsel that she did not think there was any way to eliminate the prejudice to the prosecution. The prosecutor had no suggestions. Defense counsel then acknowledged that they understood that the court had ordered that they not refer to the earlier hung jury, but asserted that they did not make that argument to the jury. That assertion simply was not supported by the record.
>
> . . . .
>
> The trial judge firmly rejected that argument but permitted counsel to continue to recommend a path other than mistrial. The prosecutor stated that the prejudice from defense counsel's argument that the first jury didn't convict so you can't either was not curable. Defense counsel countered that the jury already knew that they were the second jury to hear the case. The trial judge pointed out that the question was not whether there had been an earlier trial–which the jury knew–but that defense counsel told them that the earlier jury did not reach a verdict. Because defense counsel's argument was based on a fact not known to the jurors–that the reason for the first mistrial was that the jurors could not reach a verdict–the trial judge declared a mistrial.

The magistrate judge remarked that while he might not have reached the same conclusion, it could not be said that the state court's determination of manifest necessity was a misapplication of clearly established Supreme Court precedent. Colvin filed objections.

## 2. District Court's Ruling

The district court disagreed with the magistrate judge. The district court found there was no manifest necessity for a new trial and ruled that the state court determination was an unreasonable application of federal law as clearly established in *Washington*. It therefore granted habeas relief.

The district court characterized the state trial proceedings differently than the magistrate judge. Initially, it noted that during the pretrial colloquy, the trial judge was quite tentative in her view that any prejudice would result from a reference to prior hung jury. It described the pretrial colloquy as follows: "While the judge was clear that the attorneys could question witnesses about 'their prior testimony under oath in a prior proceeding,' the judge had doubts as to whether informing the jury that the prior jury was a hung jury would prejudice the jury." *Colvin v. Sheets*, No. 2:06-cv-681, 2008 WL 4065807, at *5 (S. D. Ohio Aug. 25, 2008). According to the district court, the trial judge "speculated that so informing the jury" might have been seen by the jury "as an indication of the difficulty of the case, or another possibility, that they could hang or 'whatever.'" *Id.* [2] The district court emphasized that the trial judge's "uncertainty"

---

[2]The district court based its conclusion on the following colloquy:

[PROSECUTOR]: . . . [I]s it okay for you if we tell the jury, hey, there was a previous trial, or do you want us to say that there was testimony given under oath?

THE COURT: Well, I don't know. I've not been faced with doing that before because in instances where this has occurred I've only had a couple of them and I think we were able to reach an agreement about one way or another how we were going to deal with it. And several of them just pled out the second time around. I don't really have an opinion about that.
    Clearly we can say in a prior proceeding you testified under oath. I don't know whether you would consider–either side would consider mentioning a hung jury as being, you know, an indicative [sic] of how difficult the case is or maybe they can hand or whatever. I don't know. *Do you think that would prejudice the jury*?

        . . . .

"was resolved, not by an order from the judge but by defense counsel's agreement not to mention the hung jury." *Id.* at *6. Regarding defense counsel's breach of the agreement, the district court observed that "the jury knew there had been a prior trial that did not result in a guilty verdict," *id.*, and that defense counsel's breach of that agreement was "unintentional." *Id.* at *7.

Next, the district court examined the colloquy between the trial judge and counsel following defense counsel's comment. The district court remarked that: "[i]t [was] obvious from the transcript that the trial judge was angry that defense counsel had caused a problem that had not been anticipated," *id.*; both the prosecutor and defense counsel did not want a mistrial declared, *id.*; and the trial judge "precipitous[ly]" and "at the first mention of a curative instruction, rejected that solution out of hand." *Id.* Further, despite defense counsel's proposal of "a specific curative instruction, *i.e.* that the jury not be bound by the outcome of prior proceedings," the trial judge *sua sponte* declared a mistrial" after only "a very brief colloquy with the attorneys." *Id.* at *8.

Based on the foregoing perceptions, the district court held that the trial judge's decision to declare a mistrial was not entitled to special deference because the case did not involve a hung jury, inadmissible evidence, or prejudicial statements. *Id.* at *14. The reference to the prior hung jury could not be deemed inadmissible or prejudicial given the trial judge's own expressions of uncertainty prior to trial about its probable effect on the current jury. *Id.* In the district court's view, "[s]uch uncertainty obviously is not a 'plain and obvious cause' for a mistrial." *Id.* (quoting *Perez*, 22 U.S. (9 Wheat.) at 580). The district court therefore held that "[t]he trial judge abused her discretion in precipitously declaring, *sua sponte*, a mistrial based *only* on her speculation and her

---

[PROSECUTOR]: My concern is if they realize that one jury has hung, they will realize that there is, therefore, an option for them and then we'll end up in the same situation.

THE COURT: That's what I just said. I don't know.
                    . . . .

    [W]hether or not we indicate that the jury hung in the last trial is the issue that is the sticky one. And I'm inclined to think probably the safest way to go is that you testified in a prior proceeding under oath and you said X and today you're saying Y.

*Colvin v. Sheets*, 2008 WL 4065807, at *6. (alterations and emphasis added by district court).

fear" of a hung jury, and by completely failing to consider Colvin's "valued right" to have his trial completed by one tribunal. *Id.* at * 14-15. Rather, the trial court's decision "was based not on any concern that the erroneous statement was so prejudicial to the prosecution that it could not be cured by a curative instruction, but instead was based solely on the judge's unfounded concern that she might end up with another hung jury." *Id.*

Next, the district court faulted the Ohio Court of Appeals. While it agreed that defense counsel's statement was improper and violated the pretrial agreement, it held that "[t]he trial court's anger at defense counsel for violating the pretrial agreement obviously was not a sufficient basis for declaring a mistrial," because it was "unintentional." *Id.* at *16. Second, the district court took issue with the state court of appeals' conclusion that defense counsel's comment was prejudicial to the state. The district court stated that such arguments were commonplace in criminal cases and could not be considered "obviously prejudicial to the state," given the trial judge's uncertainty during the pretrial conference about its effect. *Id.* The district court added that "[t]o the extent it could be considered prejudicial to some degree in this case, the reference to a prior hung jury arguably added some weight to counsel's contention that the state's evidence was insufficient, but this was not the concern of the prosecutor nor was it the basis for the judge's *sua sponte* declaration of a mistrial." *Id.* The district court felt that both the prosecutor's and trial judge's real concern was not that the comment would cause the jury to return a not guilty verdict, but rather that the jury would decide that it also could hang, requiring a third trial. *Id.*

The district court also disagreed with the Ohio Court of Appeals' conclusion that the trial judge considered other alternatives. Instead, the district court found that: "1) the trial judge was obviously outraged at defense counsel's breach of the pretrial agreement"; "2) the trial judge, at the outset, and before hearing any suggested instructions from the attorneys, believed that a curative instruction would not be adequate"; and "3) although the attorneys for the State and for [Colvin] all expressed interest in trying to formulate a curative instruction, the trial judge declared a mistrial

*sua sponte* without giving the attorneys adequate time to confer and attempt to draft an appropriate instruction that would overcome the trial judge's fear of the possibility of another hung jury." *Id.* at *17.

Finally, the district court held that the state court of appeals unreasonably ignored *Washington*'s admonition that reviewing courts verify that the trial judge exercised "sound discretion" in declaring a mistrial. *Id.* at *18. The district court held that the Ohio Court of Appeals failed to consider that the prosecutor never requested a mistrial and wanted to cure any prejudice; that the trial judge did not seriously consider alternatives to a mistrial; and that she gave "absolutely no consideration to [Petitioner's] Fifth Amendment right to have his trial completed by a particular tribunal. *Id.* at *17. The district court therefore granted habeas relief. The Warden appeals.

## II.  Discussion

### A.  AEDPA

The district court's decision to grant habeas corpus relief is reviewed de novo. *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008), *cert. denied*, 130 S. Ct. 109 (2009). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a writ of habeas corpus shall not be granted unless a petitioner shows that the state's adjudication of the claim is contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254. "A state-court decision is an unreasonable application of clearly established federal law if it correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Tucker*, 541 F.3d at 656 (quoting *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007) (quoting *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000) (internal quotation marks omitted)). "When assessing unreasonableness, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established

federal law erroneously or incorrectly.   Rather, that application must also be unreasonable." *Id*. (quoting *Parker*, 506 F.3d at 448 (quoting *Williams*, 529 U.S. at 411) (internal quotation marks omitted)).

### B.  Double Jeopardy and Manifest Necessity for Mistrial

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  It  applies to the States via the Fourteenth Amendment.  *See Benton v. Maryland*, 395 U.S. 784, 794 (1969).  The Double Jeopardy Clause "protect[s] a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions."  *United States v. Dinitz*, 424 U.S. 600, 611 (1976).  It also protects a defendant's "valued right to have his trial completed by a particular tribunal."  *Wade v. Hunter*, 336 U.S. 684, 689 (1949).  At the same time, given "the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, his valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury."  *Washington*, 434 U.S. at 505.   Thus, it is well-settled that once jeopardy attaches, prosecution of a defendant other than before the original jury is barred unless "(1) there is a 'manifest necessity' for a mistrial or (2) the defendant either requests or consents to a mistrial."   *Johnson v. Karnes*, 198 F.3d 589, 594 (6th Cir. 1999) (internal quotation marks and citation omitted).

The manifest necessity doctrine was enunciated in *United States v. Perez*, 22 U.S. (9 Wheat.) 579 (1824).  In *Perez*, the Supreme Court held that a judge may declare a mistrial and discharge a jury only if "taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated."  *Perez*, 22 U.S. at 580.  The *Perez* Court admonished that courts "are to exercise a sound discretion on the subject"; and grant a mistrial on the basis of manifest

necessity "with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *Id.*

In *Washington*, the Supreme Court stated that the standard cannot be applied mechanically without regard for the particular facts and circumstances faced by the trial court in each case. *Washington*, 434 U.S. at 506. "[T]he key word 'necessity' cannot be interpreted literally; instead, . . . we assume there are degrees of necessity and we require a 'high degree' before concluding that a mistrial is appropriate." *Id.*; *Harpster v. Ohio*, 128 F.3d 322, 328 (6th Cir.1997) ("The manifest necessity inquiry is a flexible one, with reviewing courts analyzing the trial court's exercise of discretion in light of the particular facts and circumstances of each individual case."). *Washington* established a "sliding scale of scrutiny" for determining whether manifest necessity existed. *See Ross v. Petro*, 515 F.3d 653, 669 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 906 (2009). The strictest scrutiny applies when the mistrial is based on prosecutorial or judicial misconduct. *Washington*, 434 U.S. at 508. At the other end, "great deference" or "special respect" is due when the mistrial is based on a deadlocked jury. *Id.* at 509-10. Mistrials premised on the prejudicial effect of improper evidence or argument are akin to the latter situation and are also entitled to "great deference." *Id.* at 511-14.

In *Washington*, the trial court granted a mistrial based on the prosecutor's motion after the defense counsel told the jury during opening statements that there had been a prior trial and that the prosecution had hidden evidence from the defendant. 434 U.S. at 499. The prosecutor immediately moved for a mistrial. *Id.* The trial judge opined that the reason for the new trial was irrelevant to the issue of guilt or innocence and therefore inadmissible. *Id.* However, the trial court withheld ruling on the motion for mistrial after the defense counsel requested time to research the issue. *Id.* at 500. The next morning, after hearing extended arguments, and despite the fact that the defense counsel indicated that he was not prepared to provide authority to support his position, the trial court ultimately granted the prosecutor's motion. *Id.* at 501.

The Supreme Court affirmed the trial judge's decision. It held that manifest necessity existed for a mistrial because defense counsel had "aired improper and highly

prejudicial evidence," and the trial judge, "evincing a concern of the possible double jeopardy consequences of an erroneous ruling . . . gave both the defense counsel and the prosecutor full opportunity to explain their positions on the propriety of a mistrial." *Id.* at 515-16.

The Supreme Court reasoned that:

> An improper opening statement unquestionably tends to frustrate the public interest in having a just judgment reached by an impartial tribunal. Indeed, such statements create a risk, often not present in the individual juror bias situation, that the entire panel may be tainted. The trial judge, of course, may instruct the jury to disregard the improper comment. In extreme cases he may discipline counsel, or even remove him from the trial as he did in *United States v. Dinitz*, 424 U.S. 600 . . . . Those actions, however, will not necessarily remove the risk of bias that may be created by improper argument. Unless unscrupulous defense counsel are to be allowed an unfair advantage, the trial judge must have the power to declare a mistrial in appropriate cases.

*Id*. at 512-13 (footnote omitted). Moreover,

> [t]he interest in orderly, impartial procedure would be impaired if he were deterred from exercising that power by a concern that any time a reviewing court disagreed with his assessment of the trial situation a retrial would automatically be barred. The adoption of a stringent standard of appellate review in this area, therefore, would seriously impede the trial judge in the proper performance of his "duty, in order to protect the integrity of the trial, to take prompt and affirmative action to stop . . . professional misconduct."

*Id.* at 513 (quoting *Dinitz*, 424 U.S. at 612) (footnote omitted). The *Washington* Court referenced Chief Justice Burger's comments in *Dinitz*, which also involved an improper comment by defense counsel during opening statements[3]:

> To make statements which will or cannot be supported by proof is, if it relates to significant elements of the case, professional misconduct. Moreover, it is fundamentally unfair to an opposing party to allow an attorney, with the standing and prestige inherent in being an officer of the

---

[3]In *United States v. Dinitz*, 424 U.S. 600 (1976), the Supreme Court held that there was manifest necessity for a mistrial after trial judge banished defense counsel from the courtroom for repeated misconduct during his opening statement.

court, to present to the jury statements not susceptible of proof but intended to influence the jury in reaching a verdict.

*Washington*, 434 U.S. at 513 n.32 (quoting *Dinitz*, 424 U.S. at 612) (Burger, C.J. concurring) (internal quotation marks omitted).

The *Washington* Court also addressed the role of reviewing courts. Although a trial judge is entitled to deference, the trial judge must nonetheless "'temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate.'" *Id.* at 514 (quoting *United States v. Jorn*, 400 U.S. at 486 (Harlan, J.)). Thus, "reviewing courts have an obligation to satisfy themselves that, in the words of Mr. Justice Story, the trial judge exercised 'sound discretion' in declaring a mistrial." *Id.* at 514.

## C.  Analysis

The Warden argues that the district court violated the AEDPA by failing to give deference to the state court's application of *Washington* to the facts of this case. The Warden also asserts that the district court misconstrued the record of the trial court.

We agree that the district court overstepped its boundaries under the AEDPA. Like the trial judges in *Washington* and *Dinitz*, the trial judge in this case was presented with a unique situation where a statement by defense counsel "aired improper and prejudicial remarks" which presented "to the jury statements not susceptible of proof but intended to influence the jury in reaching a verdict." *Washington*, 434 U.S. at 513 n.32 (quoting *Dinitz*, 424 U.S. at 612) (Burger, C.J., concurring)  Thus, like the trial judges in *Washington* and *Dinitz*, it was not unreasonable for the trial judge in this case to conclude that the improper statement created a risk that the entire jury might have been tainted, and could not be fixed by a curative instruction. *See Washington*, 434 U.S. at 510-13.   Contrary to the district court's conclusion, and as the magistrate judge observed, "defense counsel's argument was based on a fact not known to the jurors–that the reason for the first mistrial was that the jurors could not reach a verdict." Moreover,

as the prosecutor remarked, the statement was made "at the worst possible moment" -- during closing arguments.

The district court reasoned that the statement could not be deemed prejudicial because the trial judge was initially uncertain as to its probable effect on the jury.  Even if the trial judge was initially uncertain as to the effect of *potential* statements prior to trial, we do not see how that undermined her assessment of the *possible* effect once the statement was actually made to the jury during the trial.  *See Ross*, 515 F.3d at 668 (noting that appellate deference is due to a trial judge's evaluation of *possible* juror bias).  Indeed, *Washington* explained why a "trial judge's evaluation of the significance of possible juror bias" is entitled to deference:  "[S]he has seen and heard the jurors during their voir dire examination.  [S]he is the judge most familiar with the evidence and the background of the case on trial. [S]he has listened to the tone of the argument as it was delivered and has observed the apparent reaction of the jurors. In short, [s]he is far more conversant with the factors relevant to the determination than any reviewing court can possibly be."  *Washington*, 434 U.S. at 513-14 (internal quotation marks and citation omitted).  As the prosecutor asserted, by the time of closing arguments, both the State and the defense had "talked repeatedly since voir dire . . . [of the] State having to meet a burden of proof, the State having to prove everything."

Because the district court improperly substituted its judgment for that of the trial court it failed to recognize that the defense counsel's statement, like those of defense counsel in *Washington* and *Dinitz*, was akin to a deadlocked jury situation, subject to the most relaxed scrutiny.  *See Ross*, 515 F.3d at 669.  By substituting its perception of the trial record for that of the trial judge, the district court ignored "[t]he predominant thrust of the *Washington* opinion, [as] well-illustrated by its holding, [which] is its emphasis on the need for appellate courts to recognize the trial court's prerogative to 'exercise broad discretion in deciding whether or not "manifest necessity" justifies a discharge of the jury.'"  *Ross*, 515 F.3d at 669 (quoting *Washington*, 434 U.S. at 509).  Moreover, we should be especially reluctant to second-guess the judgment of the trial court in cases where, as here, the conduct of the defendant's own lawyer causes a mistrial.  *See*

*Washington*, 434 U.S. at 513 ("Unless unscrupulous defense counsel are to be allowed an unfair advantage, the trial judge must have the power to declare a mistrial in appropriate cases."). Given the potential for a tainted jury, the trial judge in this case did not act unreasonably in concluding that "the public's interest in fair trials designed to end in just judgments must prevail over the defendant's valued right" to a single trial. *Washington*, 434 U.S. at 516 (internal quotation marks omitted).

The district court held that the trial judge's decision was not the product of "sound discretion" because she was angry with defense counsel for breaching the agreement. The fact that the trial judge was "angry" with defense counsel after the improper comment was made did not mean she acted irrationally and in a *sua sponte* manner. *Cf. Dinitz*, 424 U.S. at 611-12 (noting that even if trial judge overreacted in disciplining trial counsel, the grant of a mistrial would be upheld where trial counsel was guilty of misconduct and trial judge's action was not motivated by bad faith). The trial judge's frustration was understandable given the extensive efforts made prior to trial to prevent the situation.

The district court also held that the trial court "precipitously" granted a mistrial contrary to the wishes of both parties. The record, however, reflects that despite her frustration with counsel, the trial judge did not abruptly grant a mistrial. *Cf. United States v. Jorn*, 400 U.S. 470 (1971) (holding that trial judge did not exercise sound discretion in granting mistrial after he precipitously, and without warning to the parties, discharged the jury because he refused to believe the prosecuting attorney's assurances that taxpayer witnesses had been given adequate warnings of their constitutional rights). First, she discussed the situation prior to trial. After the improper comment, she called a sidebar conference, and later dismissed the jury to allow for further argument. She considered defense counsel's proposed curative instruction. Contrary to the district court's holding, the record reflects that while the prosecutor expressed a "desire" to cure the potential prejudice, he was unable to offer a curative instruction, and after hearing defense counsel's proposal, stated that he thought the jury could reach only one conclusion–that the jury hung the last time.

In short, the state trial judge gave the parties an opportunity to present oral argument on the record, considered defense counsel's proposal, and rejected it as unsatisfactory to the public interest. *See Ross*, 515 F.3d at 662 (noting that the trial judge exercised sound discretion because she gave the parties an opportunity to state their positions on the record and explicitly considered and rejected some of the alternatives to declaration of a mistrial). Although the trial judge did not grant an extended recess, neither party requested one. *Cf. Washington*, 434 U.S. at 499. As we recently noted in *Ross*, "[i]n *Washington*, the Court made it clear that a court need not exhaustively consider all possible alternatives before finding 'manifest necessity' for a mistrial." *Ross*, 515 F.3d at 669. It is apparent from the record that by the time the prejudicial statement was actually uttered, the trial judge felt strongly that defense counsel's proposed instruction would not cure the prejudice, and that nothing could cure it. But nothing in the case law required the trial judge to choose a different alternative, especially when nothing suitable was on the table. The district court's adamant belief to the contrary is itself contrary to the "predominant thrust" of *Washington,* that reviewing courts not "second-guess the soundness of the trial court's exercise of discretion." *Id*. (citing *Washington*, 434 U.S. at 511).

For these same reasons, the district court's criticisms of the Ohio Court of Appeals' decision were flawed. The Ohio Court of Appeals recognized that (like the defense counsel in *Washington* and *Dinitz*) defense counsel had "up-ended the level playing field," that the comment was prejudicial to the State, and that the trial judge reasonably considered other alternatives because she gave the prosecutor an opportunity to verbalize an instruction, and entertained the one proposed by defense counsel. Furthermore, it is apparent that the Ohio Court of Appeals weighed Colvin's "valued right to have his trial completed by a particular tribunal" against the public interest because it specifically invoked Justice Black's description of that right in *Wade v. Hunter*, 336 U.S. 684, 689 (1949). *See State v. Colvin*, 2005 WL 704818, at *10. *See also Washington*, 434 U.S. at 503 n.11.

In sum, the Ohio Court of Appeals did precisely what *Washington* instructed: it exercised great deference in assuring itself that the trial judge exercised sound discretion in granting a mistrial. The trial judge ordered a mistrial only after she determined that defense counsel had aired improper and prejudicial statements designed to influence the jury's verdict that could not be cured. In short, the district court not only failed to abide by the deference required of *Washington* itself, but violated the AEDPA in concluding that the state court unreasonably applied *Washington. See Ross*, 515 F.3d at 661 (noting that deference is due at two levels when a federal habeas court reviews a state court determination of manifest necessity for a new trial).

Our decisions in *Ross* and *Wall v. Konteh*, 490 F.3d 432 (6th Cir. 2007), support this result. In *Ross*, the trial judge granted a mistrial after it received a note from the jury stating that jury deliberations had been tainted by extraneous information. *Ross*, 515 F.3d at 656. The state court of appeals determined that the trial judge had not abused her discretion for taking the note at face value and concluding that the taint could not be cured. *Id.* at 659. The state court of appeals further held that the trial judge had not abused her discretion by failing to consider alternatives not proposed by the parties or by failing to conduct *voir dire* of the jurors despite the parties' objections. *Id.* The district court held that the state court of appeals was unreasonable because the trial judge had not employed a scrupulous exercise of judicial discretion in determining that a mistrial was manifestly necessary. *Id*. at 661-62. We reversed, holding that the state court of appeals' decision "was consistent with *Washington's* insistence on appellate deference to the trial judge's evaluation of *possible* juror bias," *id*. at 668, as well as its relaxed scrutiny when the error was akin to a deadlocked jury situation. *Id.* at 669.

In *Walls*, the trial judge declared a mistrial on the second day of trial based on the concern that the events of September 11, 2001, would prevent the jurors from concentrating and compromise the parties' rights to a fair trial. *Walls*, 490 F.3d at 434-35. The state court of appeals upheld the conviction. *Id.* at 435. This court reversed the district court's decision granting habeas relief. *Id.* at 439. We concluded that although the trial judge had not explored all available alternatives, and a mistrial was not strictly

necessary, the trial judge exercised sound discretion because he did not act irrationally, considered some alternatives to mistrial, and was motivated by a legitimate concern of juror bias. *Id.*

We think this case is closely analogous to *Washington*. For this reason, we hold the district court erred in reversing the Ohio Court of Appeals.

### III.  Conclusion

For the foregoing reasons, the judgment of the district court is **REVERSED**.