*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0195p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
　　　　　　　　　*Plaintiff-Appellee*,

　　　*v.*

DEREK ALBERT CAPOZZI,
　　　　　　　　　*Defendant-Appellant*.

No. 12-6169

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 5:10-cr-00041-1—Joseph M. Hood, District Judge.

Decided and Filed: July 26, 2013

Before: MOORE, KETHLEDGE, and STRANCH, Circuit Judges.

_____

**COUNSEL**

_____

**ON BRIEF:** Stephen D. Milner, Lexington, Kentucky, for Appellant. Charles P. Wisdom, Jr., Jordi de Llano, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee. Derek A. Capozzi, Florence, Colorado, pro se.

_____

**OPINION**

_____

KAREN NELSON MOORE, Circuit Judge. Defendant-Appellant Derek Capozzi ("Capozzi") pleaded guilty and was convicted of escaping from federal custody. He appeals his conviction and sentence, raising three issues. First, he argues that the district court erred by refusing to allow him to present an affirmative defense of necessity; he claims that escape was his only option to avoid imminent, serious injury from a heart condition. Second, Capozzi contends that the district court abused its discretion by declaring a mistrial based on jury deadlock. He argues that his reprosecution violated the Double Jeopardy Clause because there was no manifest necessity to declare a

1

mistrial. Finally, Capozzi challenges his fifty-one-month sentence, arguing that he was entitled to an additional reduction under the Sentencing Guidelines for acceptance of responsibility. We reject Capozzi's arguments and, therefore, **AFFIRM** his conviction and sentence.

## I. BACKGROUND

On April 1, 2010, Capozzi, a federal prisoner serving a sentence in a federal prison in Pennsylvania, was transported by the U.S. Marshals Service pursuant to an Ex Parte Order and Writ of Habeas Corpus Ad Testificandum to London, Kentucky, in order to permit him to testify in a federal criminal trial. R. 81 (Ex Parte Order at 1) (Page ID #241). Capozzi was held at the Grayson County Detention Center in Leitchfield, Kentucky ("GCDC"), which had a contract with the federal government to house federal inmates. R. 115 (Trial Tr. at 4–5) (Page ID #454–55).

On April 15, 2010, while Capozzi was being transported in a van by GCDC personnel to an airport in Lexington, Kentucky, Capozzi "rolled out of the back of th[e] van" and fled on foot. R. 114 (Hr'g Tr. at 11) (Page ID #434); *see* R. 115 (Trial Tr. at 8–13) (Page ID #458–63). The GCDC personnel then immediately stopped the van and pursued Capozzi, firing shots. R. 114 (Hr'g Tr. at 11) (Page ID #434); *see* R. 58 (Mem. in Supp. of the Defense of Duress at 4) (Page ID #153). On April 17, 2010, law enforcement agents discovered Capozzi hiding underneath tree limbs, dirt, and leaves in a wooded area. R. 115 (Trial Tr. at 93) (Page ID #543). He was then returned to federal custody.

Subsequently, Capozzi was indicted on a charge of escaping from federal custody in violation of 18 U.S.C. § 751(a). R. 1 (Indict. at 1–2) (Page ID #1–2). Prior to trial, Capozzi moved to present a defense of necessity to the jury, arguing that his escape was justified because he faced an imminent risk of death or serious bodily injury as a result of "post-traumatic arteriovenous fistula" originating from a chest stabbing in 2008. R. 58 (Mem. in Supp. of the Defense of Duress at 2) (Page ID #151). Capozzi asserts that "he believed that his escape at that moment was his only chance at saving his own

life."  *Id.* at 3 (Page ID #152).  After a hearing on the issue, the district court denied Capozzi's motion, finding that Capozzi had not made a prima facie showing of each of the elements of the defense.  R. 72 (Dist. Ct. Op. at 2) (Page ID #214).  As a result, the district court precluded Capozzi from presenting his necessity defense to the jury and refused to give a jury instruction on the defense.

Although the trial spanned three days, the jury heard less than three hours of presentations, including both witness examinations and opening and closing arguments. R. 85 (Dist. Ct. Op. at 2) (Page ID #277).  Following an hour and a half of deliberations, the jury sent a note to the district judge asking for a copy of the transcript of the testimony of the last witness as well as a copy of defense counsel's closing argument. R. 117 (Trial Tr. at 198–99) (Page ID #648–49).  The district court informed the jury that no transcripts were available.  After an additional hour and a half of deliberations, the jury submitted another note stating that "without a transcript of today's final witness, the jury cannot come to a decision."  *Id.* at 201 (Page ID #651).

The district court then gave the jury a supplemental instruction designed for instances in which the jury appears to be deadlocked, to which neither party objected. *See id.* at 201–05 (Page ID #651–55).  After approximately two more hours of deliberation, the jury submitted a note stating:  "[A]fter continued respectful deliberation, the jury has not reached a verdict."  *Id.* at 207 (Page ID #657).  The district court concluded that the jury was "hopelessly deadlocked."  *Id.*  The district court then brought the jury back into the courtroom and asked each juror whether he or she believed that further negotiations would enable the jury to reach a unanimous verdict. All jurors responded that they did not believe further negotiations would facilitate a unanimous decision.  *Id.* at 212–14 (Page ID #662–64).  Following these responses, the district court, over Capozzi's objection, declared a mistrial on the ground that the jury was deadlocked.  *See* R. 85 (Dist. Ct. Op.) (Page ID #276–78).

A retrial was scheduled, but Capozzi subsequently decided to plead guilty.  *See* R. 150 (Crim. Minutes—Arraignment and Plea) (Page ID #809).  At sentencing, the government objected to the U.S. Probation Office's recommendation of a three-level

reduction for acceptance of responsibility. The government explained that it was not moving for a third-level reduction under U.S.S.G. § 3E1.1(b) because "Capozzi did not accept responsibility until after we had tried this matter one time, [and] expended substantial resources to do that." R. 172 (Sent. Hr'g Tr. at 3) (Page ID #916). The district court found that because the government did not move for a reduction under § 3E1.1(b), Capozzi was entitled only to a two-level reduction for acceptance of responsibility. *Id.* at 4 (Page ID #917). The district court sentenced Capozzi to fifty-one months of imprisonment, the top of his Guidelines range. R. 166 (Judgment at 2) (Page ID #872). This appeal followed.

## II. ANALYSIS

### A. Necessity Defense

Capozzi first challenges the district court's denial of his request to offer evidence of an affirmative defense of necessity and its refusal to instruct the jury regarding the defense.[1] "We review a district court's decisions concerning whether to give a particular jury instruction for abuse of discretion." *United States v. Sloan*, 401 F. App'x 66, 68 (6th Cir. 2010). "An abuse of discretion will not be found if the jury instructions as a whole . . . adequately informed the jury of the relevant considerations and provided a basis in law for aiding the jury in reaching its decision." *United States v. Anderson*, 605 F.3d 404, 411 (6th Cir. 2010) (internal quotation marks omitted). However, we review de novo the question of law whether a defendant has established a prima facie case of necessity. *United States v. Ridner*, 512 F.3d 846, 849 (6th Cir. 2008).

"'In a criminal case it is reversible error for a trial Judge to refuse to present adequately a defendant's theory of defense.'" *United States v. Johnson*, 416 F.3d 464, 467 (6th Cir. 2005) (quoting *United States v. Garner*, 529 F.2d 962, 970 (6th Cir. 1976)).

---

[1]The parties and the district court use both the term "duress" and the term "necessity" to describe the defense at issue. *See, e.g.*, R. 72 (Dist. Ct. Op. at 1 n.1) (Page ID #213). We agree with the district court that the relevant analyses for the defenses are the same, *compare United States v. Ridner*, 512 F.3d 846, 850 (6th Cir. 2008) (describing standard to evaluate whether defendant is entitled to present defense of necessity), *with United States v. Johnson*, 416 F.3d 464, 468 (6th Cir. 2005) (using the same standard for duress defense), and thus "the inconsistencies in terminology are inconsequential." *United States v. Clark*, 485 F. App'x 816, 818 n.1 (6th Cir. 2012).

In order for a defendant to be entitled to present a defense to the jury, "it is essential that the testimony given or proffered meet a minimum standard as to each element of the defense so that, if a jury finds it to be true, it would support an affirmative defense." *United States v. Bailey*, 444 U.S. 394, 415 (1980). Thus, a trial judge has a "duty to require a *prima facie* showing by the defendant that he can produce evidence on each of the elements of the defense." *Johnson*, 416 F.3d at 468. "The defendant's preliminary burden is not a heavy one and is met even where there is weak supporting evidence." *Ridner*, 512 F.3d at 849 (internal quotation marks omitted). To establish a prima facie case, the defendant must present some evidence that could support each of the following elements:

> "(1) that defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;
> (2) that the defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;
> (3) that the defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm;
> (4) that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm; [and]
> (5) that defendant did not maintain the illegal conduct any longer than absolutely necessary."

*United States v. Shemami*, 425 F. App'x 425, 427 (6th Cir. 2011) (quoting *Johnson*, 416 F.3d at 468). If the evidence Capozzi presented at the pretrial hearing was "insufficient as a matter of law to support" a defense of necessity, then the district court properly excluded the evidence. *Johnson*, 416 F.3d at 468.

In this case, we agree with the district court that Capozzi did not establish a prima facie case for his necessity defense. Even assuming, as did the district court, that Capozzi made a prima facie showing that he reasonably believed he was under an imminent and impending threat of serious injury from his heart condition, he failed to present evidence to establish a prima facie case for several of the other elements of the

defense. Capozzi presented no evidence that he had no reasonable, legal alternative to violating the law. Specifically, although Capozzi was transferred to the detention center on April 1, 2010, there is no evidence that he reported any serious medical needs to the prison's staff in the two weeks prior to his escape. R. 59 (Resp. to Def.'s Mem. in Supp. of Duress Defense at 1–2) (Page ID #155–56); *see United States v. Lizalde*, 38 F. App'x 657, 660 (2d Cir. 2002) (finding insufficient evidence to present duress defense when defendant "was interviewed by law enforcement officials several times during the period of the alleged duress" but "told them nothing of the alleged threats").

Capozzi contends that he filed many requests and grievances with prison officials asking for treatment for his heart condition. He asserts that although he was "continually told that he was going to be treated," he never received the proper care. Appellant Br. at 10. He argues that under these circumstances he had no reason to believe that he could obtain the proper medical treatment through the prison system, and thus he had no choice but to escape. However, if he had received a promise of treatment, as the district court noted, this could have been the basis for a further grievance, an expedited administrative action, or a petition for a writ of mandamus. R. 72 (Dist. Ct. Op. at 9 n.5) (Page ID #221). We agree with the district court that Capozzi did not present any evidence from which a jury could conclude that he had no legal alternatives to escape.

Further, Capozzi did not make a prima facie showing that he believed that escaping would help him get medical attention or that he continued the criminal conduct only as long as was absolutely necessary. As the district court explained:

> [T]here has been no indication that [Capozzi] sought out locations where he might seek medical care or any avowal that he looked for a hospital, doctor's office, or other facility where he might seek medical treatment in the area . . . . There is no indication that he attempted to telephone anyone for aid or asked someone in person for assistance in finding medical care—or that he even thought about doing so.

*Id.* at 10 (Page ID #222). On appeal, Capozzi argues that the reason he did not seek medical aid immediately was because he feared being shot at by law enforcement agents. Appellant Br. at 11. However, this argument does not help explain why Capozzi thought

escaping would facilitate his receipt of medical care.  Because Capozzi failed to present any evidence that would tend to show that he sought out treatment for his medical condition or that he anticipated that he would be able to get treatment by escaping, he failed to make a prima facie showing that he reasonably anticipated there would be a direct causal relationship between his escape and resolving his heart problems or that he remained a fugitive only for as long as was absolutely necessary.  Accordingly, because Capozzi failed to present evidence of every element of the necessity defense, the district court did not err by refusing to permit Capozzi to present the defense to the jury.

Because Capozzi did not establish a prima facie case for the necessity defense, the district court did not abuse its discretion by failing to instruct the jury regarding the defense.  "A court is not required to instruct the jury on a defense the theory of which is not even supported by the testimony of the defendant." *United States v. Stapleton*, 297 F. App'x 413, 423 (6th Cir. 2008); *see Sloan*, 401 F. App'x at 70 ("Because the district court did not err in finding that Sloan failed to establish a *prima facie* case of justification, there was no abuse of discretion in its determination that Sloan was not entitled to the requested jury instruction.").

**B.  Mistrial as a Result of Deadlocked Jury**

Capozzi's second contention on appeal is that a mistrial based on jury deadlock was not warranted based on the circumstances of his trial.  He further contends that permitting reprosecution violated his rights under the Double Jeopardy Clause.  "The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from repeated prosecutions for the same offense." *Oregon v. Kennedy*, 456 U.S. 667, 671 (1982) (footnote omitted).  However, "the Clause does not guarantee that the state's interest in enforcing the criminal laws against a defendant will be vindicated in a single trial." *Phillips v. Court of Common Pleas, Hamilton Cnty.*, 668 F.3d 804, 811 (6th Cir. 2012).  Indeed, the Supreme Court has held that "retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused." *Arizona v. Washington*, 434 U.S. 497, 505 (1978).  The Double Jeopardy Clause is not triggered when the district court grants a mistrial due to

"'manifest necessity,'" even when the defendant has not asked for a mistrial. *Daniels v. Burke*, 83 F.3d 760, 763 (6th Cir. 1996) (quoting *Richardson v. United States*, 468 U.S. 317, 323–24 (1984)).

The standard of manifest necessity cannot "be applied mechanically or without attention to the particular problem confronting the trial judge." *Washington*, 434 U.S. at 506. The Supreme Court in *Washington* "established a 'sliding scale of scrutiny' for determining whether manifest necessity existed." *Colvin v. Sheets*, 598 F.3d 242, 253 (6th Cir. 2010). As we have explained: "The strictest scrutiny applies when the mistrial is based on prosecutorial or judicial misconduct. At the other end, great deference or special respect is due when the mistrial is based on a deadlocked jury." *Id.* (internal quotation marks and citations omitted).

A deadlocked jury "has long been considered the 'classic basis' establishing [manifest] necessity" justifying a mistrial. *Blueford v. Arkansas*, 132 S. Ct. 2044, 2052 (2012) (quoting *Washington*, 434 U.S. at 509). As a result, "a trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which [a defendant] was subjected." *Richardson*, 468 U.S. at 326. "A trial judge's decision to declare a mistrial when he considers the jury to be deadlocked is accorded great deference by a reviewing court since the trial court is in the best position to assess whether the jury can reach a just verdict if it continues to deliberate." *United States v. Ford* (*In re Ford*), 987 F.2d 334, 339 (6th Cir. 1992); *see United States v. Stevens*, 177 F.3d 579, 583 (6th Cir. 1999). To determine whether a district court abused its discretion by declaring a mistrial, we consider the following factors:

> (1) a timely objection by the defendant, (2) the jury's collective opinion
> that it cannot agree on a verdict, (3) the length of the jury deliberations,
> (4) the length of the trial, (5) the complexity of the issues presented to the
> jury, (6) any proper communication which the judge has with the jury,
> (7) the effects of possible exhaustion and the impact which coercion of
> further deliberations might have on the verdict, and (8) the trial judge's
> belief that additional prosecutions will result in continued hung juries.

*In re Ford*, 987 F.2d at 339.

In this case, the district court acted within its discretion when it declared a mistrial. The jury deliberated for five hours, while the testimony and arguments at trial lasted for a total of only three hours. *See* R. 85 (Dist. Ct. Op. at 2) (Page ID #277). The district court explained that these lengthy deliberations (given the comparatively short length of the trial) occurred in the context of a trial for an escape violation, which "should be [a] simple affair[] . . . . [as] [t]he key elements are capable of objective demonstration." *Bailey*, 444 U.S. at 417. The district court gave the jury an *Allen* charge in the exact language of the Sixth Circuit Pattern Jury Instruction, which we not only have approved, but for which we have expressed a "strong preference." *United States v. Clinton*, 338 F.3d 483, 488 (6th Cir. 2003); *see* R. 83 (Suppl. Jury Instruction) (Page ID #267). The district court also asked each juror individually whether he or she believed that further deliberations might lead to a unanimous decision. Every juror responded that he or she did not believe further deliberations would help facilitate a verdict. Under these circumstances, especially given the deference afforded to district courts in this context, we conclude that the district court did not abuse its discretion in finding that the jury was deadlocked and declaring a mistrial accordingly. Because the jury was deadlocked, a mistrial was manifestly necessary, and thus the Double Jeopardy Clause did not bar reprosecution of Capozzi.

Capozzi further argues that a variety of errors by the district court and the government during trial caused the jury to be deadlocked, and that as a result, there was no manifest necessity permitting the district court to declare the mistrial. These purported errors include the government's delayed disclosure of evidence relating to the contract between the federal government and GCDC, the district court's failure to give a jury instruction relating to *United States v. McCue*, 643 F.2d 394 (6th Cir. 1981), and that the government's proof at trial resulted in an impermissible variance from the indictment. We reject this approach, because "the double jeopardy clause does not require 'manifest necessity' for the events that triggered the mistrial; manifest necessity for the mistrial itself will ordinarily permit a second trial." *United States v. Buljubasic*, 808 F.2d 1260, 1265 (7th Cir. 1987); *see also United States v. Goland*, 897 F.2d 405, 410 (9th Cir. 1990). Given that Capozzi has not alleged "bad faith conduct by the trial

judge," his argument that trial errors "contributed to the evident manifest necessity for mistrial . . . . is an insufficient basis to challenge the exercise of the trial judge's discretion in finding the jury deadlocked." *United States v. Simpson*, 94 F.3d 1373, 1378 (10th Cir. 1996). The fact that the jury in Capozzi's first trial was genuinely deadlocked created a manifest necessity justifying a mistrial.

This rationale also disposes of the argument raised in Capozzi's pro se brief on appeal. Capozzi argues that had the district court given a jury instruction relating to *United States v. McCue*, the jury would not have been deadlocked, and thus there would have been no manifest necessity to declare a mistrial. *See* Pro Se Br. at 8–10. This argument effectively asserts that there was no manifest necessity for the events that caused the jury to become deadlocked. But, as we explained, the Double Jeopardy Clause does not require manifest necessity for the events triggering the jury to become deadlocked in order to permit reprosecution. *See Buljubasic*, 808 F.2d at 1265. Setting aside this response, we doubt that a jury instruction based on *McCue*—an instruction that Capozzi did not request at trial—would have aided Capozzi's defense: *McCue* held that as a matter of law, a defendant is in federal custody for purposes of § 751(a) when he is being transported pursuant to a writ of habeas corpus ad testificandum. 643 F.3d at 395. An instruction based on *McCue* would have led the jury to conclude that the federal-custody element of the § 751(a) charge, the only element contested by Capozzi at trial, was established. Thus, we are not persuaded by Capozzi's pro se brief that the district court's grant of a mistrial was an abuse of discretion.**[2]**

## C. Sentence

Finally, Capozzi challenges the imposition of his fifty-one-month sentence, arguing that he is entitled to an additional reduction in his offense level under § 3E1.1(b) of the Sentencing Guidelines. Although he frames his argument in terms of procedural reasonableness, *see* Appellant Br. at 25, his sole challenge to his sentence raises a

---

**[2]**Because we have already permitted Capozzi to file a pro se brief in this appeal and have considered the arguments contained therein, we deny as unnecessary Capozzi's motion to strike portions of the appellate brief filed by his counsel.

question of the proper interpretation of the Guidelines. We will therefore construe his argument as raising a legal question about the interpretation of the Guidelines, which we review de novo. *United States v. Robertson*, 260 F.3d 500, 506 (6th Cir. 2001). We review the district court's findings of facts relating to sentencing for clear error. *See id.*

Capozzi contends that because he pleaded guilty, he was entitled to the one-level reduction in his offense level for acceptance of responsibility contemplated in U.S.S.G. § 3E1.1(b). *See* Appellant Br. at 25. Under § 3E1.1(a) of the Sentencing Guidelines, a defendant may receive a two-level decrease in his offense level if he "clearly demonstrates acceptance of responsibility." U.S.S.G. § 3E1.1(a). Under § 3E1.1(b), the defendant may receive an additional one-level decrease if:

> the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level **16** or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently.

*Id.* § 3E1.1(b). A reduction under subsection (b) "is permitted only if the government moves for it in a motion." *United States v. Collins*, 683 F.3d 697, 704 (6th Cir. 2012). "[T]he government may refuse to move for the third-level reduction so long as the government's reason for refusal is not based upon a constitutionally impermissible factor and is not arbitrary." *United States v. Coleman*, 627 F.3d 205, 215 (6th Cir. 2010); *see United States v. Lapsins*, 570 F.3d 758, 769 (6th Cir. 2009). The government's interests in "avoiding trial preparation and in the efficient allocation of government resources" legitimately may justify its decision not to move for a reduction under § 3E1.1(b). *Collins*, 683 F.3d at 707.

We reject Capozzi's argument that he is entitled to the § 3E1.1(b) reduction. There is no evidence that the government's decision was arbitrary or based on an unconstitutional motive, such as religion, race, or sex. Rather, the government's decision was based on the fact that Capozzi did not plead guilty until after the

government already had expended resources on litigating a trial. The government reasonably declined to move for the additional one-level decrease in the offense level for acceptance of responsibility when Capozzi denied responsibility until after a mistrial was declared following the completion of a full trial. Because the government did not move for the reduction under § 3E1.1(b), Capozzi was not eligible for the additional one-level reduction for acceptance of responsibility. *See Collins*, 683 F.3d at 704. Accordingly, we reject Capozzi's challenge to his sentence.

### III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the decision of the district court.