**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0599n.06

No. 14-5549

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Aug 21, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| ARTHUR SMITH, | ) | |
| | ) | **OPINION** |
| **Defendant-Appellant.** | ) | |
| | ) | |

**BEFORE: BOGGS and MOORE, Circuit Judges, and REEVES, District Judge.**[*]

**KAREN NELSON MOORE, Circuit Judge.** This case involves the robbery of a McDonald's restaurant in Clarksville, Tennessee. On June 29, 2009, a man entered the restaurant wearing a wig, a black cap, a pair of large sunglasses, and a dark sweatshirt over grey sweatpants. Upon entering, he took out a gun, which he used to corral employees to the back of the store, near the store manager's office. Once in the back, he demanded that the manager enter his office and empty the restaurant's safe. The manager placed approximately $3500 in the robber's plastic shopping bag. About a week later, police were approached by Tina Reed, who claimed to be the girlfriend of Arthur Smith. Reed stated that Smith had returned home on the night of the robbery in an outfit matching that of the robber, carrying a plastic bag full of money. Acting in part on Reed's tip, police obtained a search warrant for Smith's residence. The officers

---

[*]The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

quickly found evidence linking Smith to the robbery. Smith was eventually charged and convicted of committing a Hobbs Act robbery in violation of 18 U.S.C. § 1951; being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924; and knowingly using, carrying, and brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A).

On appeal, Smith contends that the district court erred by denying his motion to suppress evidence and his motion for a *Franks* hearing, that it abused its discretion by rejecting his proposed addict-informant jury instruction, that it abused its discretion by providing selected trial transcripts to the jury (accompanied by a cautionary instruction), and that the evidence presented at trial was insufficient to convict him of the three charges. These claims are without merit. For the reasons that follow, we **AFFIRM** Smith's conviction.

## I. BACKGROUND

### A. Facts

As various McDonald's employees were getting ready to close on June 29, 2009, a man walked in. R. 134 (Trial Tr. at 5) (Page ID #693). He was wearing a somewhat peculiar outfit: a wig, a black cap, a pair of large sunglasses, and a dark sweatshirt with grey sweatpants. *Id.* at 17 (Page ID #705). He also carried a gun, which he pointed directly at the store's manager. *Id.* at 5 (Page ID #693). Using the gun, the robber motioned the manager and other employees to the back of the store, near the manager's office. Once there, the robber instructed "everybody [to] get down on the ground except for" the manager. *Id.* at 6 (Page ID #694). He cocked his

weapon and demanded that the manager empty the restaurant's safe, as well as a cash register near the front of the store. *Id.* at 7 (Page ID #695). With approximately $3500 in hand, the robber gave a final order: no one was to get up for five minutes. Those disobeying would be shot by the robber's partner, who was allegedly watching the restaurant. *Id.* at 8 (Page ID #696).

A few days later, police intervened in an altercation between Tina Reed and George Miles near a Dollar Store on Madison Street. *Id.* at 37 (Page ID #725). The police conducted a brief search, found an Ambien in Reed's purse, and gave her a citation for unlawful possession of drugs. *Id.* at 53–54 (Page ID #741–42). Reed was not arrested, but the officers did ask her to come down to the police station at a later time. During a subsequent conversation with the police, Reed implicated Arthur Smith in the robbery. She stated that she was Smith's on-and-off girlfriend. The two had met in April 2009, and Reed spent about two or three nights per week at Smith's apartment over the next three months. *Id.* at 32–33 (Page ID #720–21). On June 29, Reed recalled Smith returning home with a teal-colored plastic bag; when Reed opened the bag, she found it full of money. *Id.* at 35 (Page ID #723). Smith also brought home a "wig, glasses, [and a] pullover hoodie," as well as a "black hat with a brim on the front." *Id.* Officers showed Reed surveillance video of the robbery, and Reed identified Smith as the perpetrator. Reed received a $1000 Crime Stoppers award for providing information related to the robbery. *Id.* at 44 (Page ID #732).

Based in large part on the information provided by Reed, the police obtained a search warrant for Smith's apartment. During their search, officers located items associated with the

robbery. *See id.* at 71–85 (Page ID #759–773) (admitting various items into evidence). A federal grand jury later returned a three-count indictment against Smith, charging him with committing a Hobbs Act robbery; being a felon in possession of a firearm; and knowingly using, carrying, and brandishing a firearm during and in relation to a crime of violence. R. 1 (Indictment at 1–2) (Page ID # 1–2).

## B. Procedural History

### 1. Motion to Suppress and Motion for a *Franks* Hearing

Prior to trial, Smith filed a motion with the district court, seeking to suppress evidence obtained from the initial search of his apartment and a subsequent search of his mini-storage unit. Smith also requested a *Franks* hearing based on the assertion that the police "mischaracterized the statements of one witness and failed to corroborate the accusations of another." R. 44 (Mot. to Suppress at 10) (Page ID #75).

The initial search-warrant affidavit relied on information supplied by Reed and a male prisoner, Michael Kestner. With respect to Reed, Smith argued that she had "never stated that the movant [Smith] admitted [to] robbing a McDonald's." *Id.* at 2 (Page ID #67). Reed's testimony also was not, according to Smith, entirely consistent with Kestner's. With respect to Kestner, Smith stated that there were "meritorious questions about the faithfulness of [the police's] representation of [Kestner's] interview," noting that Kestner could not provide Smith's last name during his interview and that the officers had pressured Kestner to name McDonald's as the restaurant that Smith had robbed. *Id.* at 7 (Page ID #72).

4

On May 3, 2012, the district court held a hearing on Smith's motion for a *Franks* hearing and his motion to suppress evidence. After considering the parties' arguments, the district court summarized Smith's assertion that "the [government's] affidavit was misleading because the detective coaxed Mr. Kestner into saying that he knew or had heard that the defendant had done robberies of fast food restaurants in Clarksville." R. 136 (Suppression Hr'g Tr. at 28) (Page ID #889). Absent Kestner's statements, the affidavit would be based only on Reed's testimony which would (according to Smith) have been insufficient to establish probable cause. *Id.* at 29 (Page ID #890).

The district court disagreed. Having reviewed video of Kestner's interview, the district court noted that the affidavit's characterizations were "not false or misleading." *Id.* at 32 (Page ID #893). Kestner had described a number of different fast-food restaurants that Smith had allegedly robbed and, after some questioning, Kestner mentioned the McDonald's as a possible robbery location. In addition, the district court noted that the search warrant contained sufficient probable cause even without Kestner's testimony. Namely, Reed stated that Smith had returned home with "the wig, the knit cap, the large sunglasses, tennis shoes, the bag, [and] the gun," all items also found on the surveillance tape. *Id.* at 33 (Page ID #894). The district court concluded that although this information "may not be enough for beyond a reasonable doubt for a jury, . . . it is certainly enough for probable cause to believe that evidence of crime would be found" at Smith's apartment. *Id.* Having determined that the initial search warrant was valid, the district court also upheld "the second warrant for the storage unit," finding that it was not the "fruit of

5

the poisonous tree." *Id.* Thus, the district court determined that Smith had not met the requirements for a *Franks* hearing and that probable cause supported each of the search warrants. *Id.* at 30–31 (Page ID #891–92).

### 2. Addict-Informant Jury Instruction

During Smith's re-trial[1], defense counsel requested that the district court issue an addict-informant jury instruction with respect to Reed. That instruction, modeled after Instruction 7.06B of the Sixth Circuit's Criminal Pattern Jury Instructions, read as follows:

> (1) You have heard the testimony of Tina Reed. You have also heard that she was using crack cocaine during the time that she testified about, and that the government has promised [her] that she will not be prosecuted for possession of drugs and violation of probation stemming from a felony conviction in exchange for [her] assistance.
>
> (2) It is permissible for the government to make such a promise. But you should consider Tina Reed's testimony with more caution than the testimony of other witnesses. An addict may have a constant need for drugs, and for money to buy drugs, and may also have a greater fear of imprisonment because her supply of drugs may be cut off. Think about these things and consider whether her testimony may have been influenced by the government's promise.
>
> (3) Do not convict the defendant based on the unsupported testimony of such a witness, standing alone, unless you believe her testimony beyond a reasonable doubt.

R. 113 (Proposed Jury Instructions at 23) (Page ID #384). The government opposed this request, stating that "Tina Reed [had] denied that she was using crack cocaine during the time that was testified about," and that both the police and Reed had "denied that any charges were dropped in

---

[1]The district court declared a mistrial after Smith's first trial in June 2012 because the jury was "unable to reach a verdict." R. 73 (Crim. Mins. at 1) (Page ID #257).

exchange for her assistance in this case." R. 135 (Trial Tr. at 72) (Page ID #849). The district court agreed, and instead included the following jury instruction, modeled after Sixth Circuit Criminal Pattern Jury Instruction 7.06A, "Testimony of a Paid Informant":

> You have heard testimony from Tina Reed that a citation was dismissed and that she received a monetary reward after her cooperation with state law enforcement authorities. You should consider whether Tina Reed's testimony may have been influenced by any such action by law enforcement. Do not convict the Defendant based upon the unsupported testimony of such a witness, standing alone, unless you believe the testimony beyond a reasonable doubt.

R. 113 (Jury Inst. at 18) (Page ID #379).

### 3. Transcript Request and Cautionary Instruction

During jury deliberations, the jury requested copies of the trial testimony of Tina Reed and Officer Daniel Lane, the officer who primarily was tasked with investigating the robbery and the officer who had provided the affidavit in support of the initial search warrant. R. 114 (Jury Notes at 4) (Page ID #391). Before the district court could act on this request, the jury submitted another note, advising the court that "[w]e are at a standstill until[] we get the transcripts. Can we get an update, please[?]." *Id.* at 6 (Page ID #393). The district court complied with the jury's request, but included a cautionary instruction before providing the transcripts. *See* R. 139 (Trial Tr. at 3) (Page ID #929) ("We're going to give you these transcripts of Daniel Lane and Tina Reed. However, you must consider all the evidence that has been presented during the course of the trial, and you must not single out any particular part of the evidence to the exclusion of other evidence that was admitted during the course of the trial."). The jury received the transcripts at 3:26 PM on October 24, 2013. *Id.* The district court noted to the lawyers that the jurors would

"stay for another hour and a half and then go home." *Id.* Yet, shortly after receiving the transcripts, the jury returned a verdict convicting Smith on all counts. R. 115 (Jury Verdict at 1) (Page ID #395); *see also* Appellee Br. at 10 (stating that the jury reached a verdict within an hour of receiving the transcripts).

## II. ANALYSIS

### A. Motion to Suppress and *Franks* Hearing

#### 1. Standard of Review

We "review[] the district court's denial of a *Franks* hearing under the same standard used to review the district court's denial of a motion to suppress: factual findings are reviewed for clear error and conclusions of law are reviewed de novo." *United States v. Rose*, 714 F.3d 362, 369–70 (6th Cir. 2013). "A defendant is entitled to a *Franks* hearing if he: 1) makes a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit; and 2) proves that the false statement or material omission is necessary to the probable cause finding in the affidavit." *Id.* at 370 (citing *Franks v. Delaware*, 438 U.S. 154, 171–72 (1978)).

#### 2. Analysis

Smith contends that, "[p]ursuant to *Franks*, the district court erred by failing to severe [sic] the tainted portions from the affidavit, ie. [sic], the statements given by Kestner. Had the district court severed these offending recitations, the affidavit could not have supported a finding of probable cause under the Fourth Amendment." Appellant Br. at 30.

These assertions miss the mark. In his affidavit, Officer Daniel Lane included a single-paragraph summary of his interview with Kestner. That summary notes that Kestner was "a friend of Arthur Smith" and that he had "heard Mr. Smith discuss planning robberies of fast food restaurants . . . in Clarksville, TN and surrounding areas." R. 54-1 (Affidavit at 1) (Page ID #114). These statements are corroborated by the video recording of Kestner's interview. After viewing this recording, the district court rejected Smith's assertion that Kestner's statements had been unduly coerced.

We need not weigh in on whether the district court erred in arriving at this conclusion. Whether Smith has made "a substantial preliminary showing that [Officer Lane] knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit," *Rose*, 714 F.3d at 370, is only the first part of a two-part analysis that we must conduct in order to determine whether Smith is entitled to a *Franks* hearing. The second step requires us to review whether Smith has proven "that the false statement or material omission is necessary to [a finding of] probable cause." *Id.*

Smith fails to clear this second hurdle. As the district court pointed out, Reed's testimony alone would have been sufficient to justify a finding of probable cause. "[I]n order to answer 'the commonsense, practical question' of whether an affidavit is sufficient to support a finding of probable cause," we "must look to the 'totality of the circumstances,' including [the] confidential informant's 'veracity, reliability, and basis of knowledge.'" *United States v. May*, 399 F.3d 817, 822 (6th Cir. 2005) (quoting *Illinois v. Gates*, 462 U.S. 213, 230 (1983)). Reed's

knowledge was based on the fact that she spent several nights per week at Smith's apartment. Her information was credible and reliable: she described the outfit that Smith wore on the night of the robbery. That information matched the description of the robber as captured by surveillance video and as described by various McDonald's employees. She then identified Smith as the perpetrator after viewing surveillance footage. These facts are sufficient to support a finding of probable cause. *See, e.g.*, *Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013) ("Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence . . . have no place in the [probable-cause] decision. All [that is] required is the kind of 'fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.'") (quoting *Gates*, 462 U.S. at 235, 238, 231). The district court did not err in denying Smith's motion for a *Franks* hearing or in denying Smith's motion to suppress.

## B. Smith's Request for an Addict-Informant Jury Instruction

### 1. Standard of Review

"We review a denial of a proposed jury instruction for abuse of discretion." *United States v. Svoboda*, 633 F.3d 479, 483 (6th Cir. 2011). "An abuse of discretion will not be found if the jury instructions as a whole . . . adequately informed the jury of the relevant considerations and provided a basis in law for aiding the jury in reaching its decision." *United States v. Capozzi*, 723 F.3d 720, 725 (6th Cir. 2013). With respect to the specific instruction at issue, we have held that "[n]o per se rule . . . requires that an addict-informant instruction be given in all cases involving the testimony of an addict-informant." *United States v. Combs*, 369 F.3d 925,

939 (6th Cir. 2004). The district court must instead consider the circumstances particular to each case. *United States v. Anderson*, 166 F.3d 1215 (Table), 1998 WL 833701, at *4 (6th Cir. Nov. 20, 1998).

## 2. Analysis

Smith's contention that the district court should have given an addict-informant jury instruction fails for three reasons. First, there is no clear evidence that Reed was an addict at the time she approached police. In fact, when asked at trial about her crack cocaine habit in June 2009, she stated that she was "pretty much off of it by then. I did smoke a little bit off and on here and there, but I was pretty much off of it." R. 134 (Trial Tr. at 45) (Page ID #733); *see also id.* at 43, 46 (Page ID #731, 734) (reiterating stance). *See United States v. Rich*, 205 F.3d 1342 (Table), 2000 WL 92269, at *5 (6th Cir. Jan 19, 2000) (upholding district court decision to not give an addict-informant instruction because "the district court found that there was no evidence in the record to suggest that [the informant] was addicted at the time of his cooperation with the government.").

Second, both Reed and Officer Lane testified that Reed was not promised anything in exchange for her cooperation other than the publicly advertised monetary award. Reed answered in the negative when asked whether "the government promised [her] anything at all for [her] testimony here today" and whether she "expect[ed] anything from the government for [her] testimony." R. 134 (Trial Tr. at 44) (Page ID #732). Instead, she insisted that she turned Smith in because "[a]t the time[,] I was living on the streets. I needed the money." *Id.* at 42 (Page ID

#730).  Reed's version of events is consistent with Officer Lane's recollection that he did not promise he was "going to drop any charges [against Reed]" in exchange for her assistance.  *Id.* at 85 (Page ID #773).

Third, the district court did include an alternative jury instruction that asked the jury to keep in mind that Reed had been paid for her information.  That instruction reflects what actually occurred in this case.  It also mirrors what occurred in *United States v. Anderson*, where the district court gave a cautionary instruction with respect to the informant's testimony because of the informant's status as a codefendant.  1998 WL 833701, at *4.  We affirmed the district court's decision to deny defendant's request for an addict-informant jury instruction in *Anderson*, and we do the same here.

As a final note, Smith's reliance on our decision in *United States v. Griffin*, 382 F.2d 823 (6th Cir. 1967), is misplaced.  As Smith concedes, Griffin's conviction "rested largely on the uncorroborated testimony of an addict-informant."  Appellant Br. at 22; *see Griffin*, 382 F.2d at 828–29.  The district court did not provide the jury with an addict-informant jury instruction or, for that matter, any cautionary instruction.  Here, on the other hand, Reed's testimony did not go uncorroborated:  her description of Smith's outfit and the bag of money that he brought home matches the description of the robber.  Moreover, Reed's financial motivations were sufficiently addressed in another, more appropriate jury instruction.  In light of these facts, the district court did not abuse its discretion in denying Smith's request for an addict-informant jury instruction.

## C. Jurors' Request for Selected Trial Transcripts

### 1. Standard of Review

"We review the propriety of a court's decision to allow a deliberating jury to review trial testimony under an abuse of discretion standard." *United States v. Rodgers*, 109 F.3d 1138, 1142 (6th Cir. 1997). "An abuse of discretion occurs when we are left with the 'definite and firm conviction that the [district] court . . . committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors' or 'where it improperly applies the law or uses an erroneous legal standard.'" *United States v. Haywood*, 280 F.3d 715, 720 (6th Cir. 2002) (quoting *Huey v. Stine*, 230 F.3d 226, 228 (6th Cir. 2000)).

### 2. Analysis

Smith claims that "[p]roviding the jury with the testimony of two out of the government's three witnesses stacked the deck and gave the jury a roadmap to conviction." Appellant Br. at 27. He asserts that the district court abused its discretion in this respect, notwithstanding the cautionary instruction that the district court gave after it decided to grant the jury's request.

Smith is correct that there are "inherent dangers in allowing a jury to read a transcript of a witness's testimony during its deliberations." *Rodgers*, 109 F.3d at 1143 (internal quotation marks omitted). In *Rodgers*, we noted that the jury might "accord undue emphasis to the testimony" or "apprehend the testimony out of context." *Id.* (internal quotation marks omitted). In addition, "[t]hese dangers are escalated if the jury makes the request after reporting an inability to arrive at a verdict," *id.* (internal quotation marks omitted), which it did here. *See also*

*United States v. Padin*, 787 F.2d 1071, 1077 (6th Cir. 1986) (noting concern but holding that district court did not abuse its discretion in reading "specific and limited excerpts of [a witness's] testimony [to] respond[] to the jury's request.").

But the entire purpose of providing a cautionary instruction is to mitigate these dangers, as we also made clear in *Rodgers*. *See* 109 F.3d at 1145 ("[W]e hold that if a district court chooses to give a deliberating jury transcribed testimony, or chooses to re-read testimony to a deliberating jury, the district court must give an instruction cautioning the jury on the proper use of that testimony . . . . Th[is] rule . . . will not place a great burden on the district courts and can serve as an antidote to the natural tendency of a deliberating jury to focus on the testimony it has requested."). To be sure, we did state that "a cautionary instruction does not necessarily immunize a district court from error." *Id.* "It is possible in a particular case that the choices made by a judge regarding whose testimony and/or what portions of testimony should be re-read may constitute an abuse of discretion." *Id.* However, it is unclear why this case should be considered to be such a case—or, more precisely, how the district court abused its discretion.

Unlike the cases discussed in Smith's brief, the district court here did not inadvertently send trial transcripts to the jury, nor did it read back only direct-examination testimony while omitting cross-examination testimony. *See* Appellant Br. at 26. Smith also does not allege that the transcripts provided to the jury were inaccurate or incomplete. *See Rodgers*, 109 F.3d at 1143. In addition, in deciding to grant the jury's request for these transcripts, the district court also denied the jury's request for a photograph of Smith and a copy of the slideshow used during

closing arguments. *See* R. 139 (Trial Tr. at 2) (Page ID #928). ("The answer is, no, that's not evidence."). This determination suggests that the district court did not grant these requests as a matter of course, but considered each of them individually "upon a weighing of the relevant factors." *Haywood*, 280 F.3d at 720 (internal quotation marks omitted). The district court did not abuse its discretion in providing jurors transcripts of Reed's and Lane's testimony.

## D.  Sufficiency of the Evidence

### 1.  Standard of Review

"We review a claim of insufficient evidence in the light most favorable to the government." *United States v. Fekete*, 535 F.3d 471, 476 (6th Cir. 2008). Our review is limited to "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). "A defendant making such a challenge bears a very heavy burden." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006).

### 2.  Analysis

At the close of its case-in-chief, the government submitted a number of uncontested stipulations, including the fact that Smith "had been convicted in court of a crime punishable by a term of imprisonment exceeding one year," that the firearm identified in the indictment had moved in interstate commerce, and that the McDonald's restaurant he had allegedly robbed had moved articles in interstate commerce. R. 135 (Trial Tr. at 27–28) (Page ID #804–05).

Smith does not object to any of these stipulations on appeal. In fact, his sufficiency-of-the-evidence claim is, by his own admission, largely a repeat of his addict-informant argument: "Smith's argument regarding the sufficiency [of the] evidence tracks closely [to] his second assignment of error, the trial court's failure to give the addict-informant instruction." Appellant Br. at 34. We have already rejected Smith's addict-informant argument. His sufficiency-of-the-evidence argument is equally unavailing.

With respect to his conviction for robbery, the Hobbs Act provides that "[w]hoever in any way . . . affects . . . the movement of any article or commodity in commerce . . . by robbery or extortion . . . shall be fined . . . or imprisoned." 18 U.S.C. § 1951(a). Smith does not contest the fact that the McDonald's restaurant was robbed on June 29, 2009. Nor does he dispute that the robbery affected interstate commerce. *See United States v. Davis*, 473 F.3d 680, 682 (6th Cir. 2007). His sole argument appears to be that he was not the robber. Smith called two witnesses to testify in his favor: an optometrist who testified to Smith's poor eyesight, *see* R. 135 (Trial Tr. at 34) (Page ID #811), and another girlfriend of Smith, who attempted to impeach Reed's testimony, *see id.* at 46–47 (Page ID #823–24). Yet the government presented several pieces of evidence linking Smith to the robbery: Reed's testimony, the fruits from the search of Smith's apartment, the surveillance footage of the robbery, and the testimony of the McDonald's employees. Together, this evidence—considered in the light most favorable to the government—is sufficient to support his conviction for robbery under the Hobbs Act.

Smith's remaining convictions follow from his robbery conviction. As already noted, Smith concedes that he has been convicted of a felony. During the search of his apartment, officers found a handgun located exactly where Reed had told them they would find it— underneath Smith's nightstand. R. 134 (Trial Tr. at 35, 75) (Page ID #723, 763). The surveillance footage shows the robber pointing a gun at the store manager. The manager noted in addition that the robber cocked his gun in the presence of other employees. *Id.* at 5–6 (Page ID #693–94). These facts provide a basis for convicting Smith of being a felon in possession and of using, carrying, and brandishing a firearm during and in relation to a crime of violence.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** Smith's conviction.