NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0534n.06

No. 16-5040

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Sep 15, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| ALI AL-KADUMI, | ) | WESTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:      COLE, Chief Judge; DAUGHTREY, and MOORE, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. A jury convicted the defendant, Ali Al-Kadumi, for making false statements in connection with his naturalization application in violation of 18 U.S.C. § 1425(a). During trial, the district court excluded the testimony of Al-Kadumi's expert witness and barred Al-Kadumi from asserting the affirmative defense of coercion or duress, finding that Al-Kadumi had failed to establish a *prima facie* case for that defense. On appeal, Al-Kadumi challenges those decisions, claiming violations of his constitutional right to present a defense in a criminal trial. Al-Kadumi also argues that there was insufficient evidence to sustain his conviction. For the following reasons, we affirm the district court's judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

After Al-Kadumi, an Iraqi native, was released from Iraqi imprisonment for demonstrating against Saddam Hussein's regime, he sought protection from the United States

military.  (Page ID 539, 541)  At a refugee camp in Saudi Arabia, Al-Kadumi met Alaa Naji

Selman, whom he befriended.  (Page ID 543)  Through his conversations with Selman, Al-

Kadumi learned that Selman has a brother named Hussein Naji Selman.  (Page ID 451)  After

leaving the refugee camp, Al-Kadumi purchased an identity card that identified him as "Hussein

Naji Selman."  (Page ID 545-46)  Al-Kadumi testified that he had used Hussein's name because

Al-Kadumi's name was identifiable as Shia Muslim, and he was fearful that the use of his own

name would jeopardize his and his family's safety.  (Page ID 544-45)

Al-Kadumi sought asylum as a political refugee with the United Nations High

Commissioner for Refugees, which referred his case to the United States.  (Page ID 546, 468,

471-72)  On his refugee application and during his interview with a United States immigration

official, Al-Kadumi stated that his name was "Hussein Naji Selman."  (Page ID 472-74, 546,

549, 911-12)  Al-Kadumi's refugee application was approved, and he immigrated to the United

States in 1998.  (Page ID 912, 548)  Again indicating that his name was "Hussein Naji Selman,"

Al-Kadumi applied for permanent-resident status in the United States, which was approved.

(Page ID 922)  In 2005, Al-Kadumi applied for United States citizenship, again stating that his

name was "Hussein Naji Selman," but this time requesting a "name change" to "Ali Sabeeh Al

Kadumi."  (Page ID 929)  The naturalization application (Form N-400) asked, "Have you EVER

given false or misleading information to any US. government official while applying for any

immigration benefit or to prevent deportation, exclusion or removal?," and "Have you EVER

lied to any U. S. government official to gain entry or admission into the United States?"  (Page

ID 936)  Al-Kadumi answered "no" to both of these questions.  (Page ID 936)  After confirming

the information on the N-400 application with Al-Kadumi during an interview, a United States

naturalization officer approved Al-Kadumi's application. (Page ID 498-505, 938) Al-Kadumi

signed the United States oath of allegiance using the name "Hussein Selman." (Page ID 938)

Several years after his naturalization, Al-Kadumi admitted to an FBI agent that he was

not Hussein Naji Selman, that Hussein was another individual in Iraq, and that Al-Kadumi had

used Hussein's name on the refugee, permanent-resident, and naturalization applications. (Page

ID 430-31) A grand jury indicted Al-Kadumi with "knowingly procur[ing] . . ., contrary to law,

naturalization of his citizenship, by making false statements on his Immigration and

Naturalization . . . Form N-400" in violation of 18 U.S.C. § 1425(a). During his trial, Al-

Kadumi testified that he had applied for naturalization using the name of "Hussein Naji Selman,"

knowing that his name was not "Hussein Naji Selman." (Page ID 571) Al-Kadumi stated that he

had used Hussein's name on the application because that was "the name that I came with as a

refugee." (Page ID 571, 575)

At trial, Al-Kadumi sought to introduce testimony from his expert, Dr. Julie Peteet, on

Shia Muslim political repression and cultural practices, in support of an argument that he was

under coercion or duress when he used Hussein's name.[1] Concluding that Al-Kadumi failed to

establish a *prima facie* case for the affirmative defense of coercion or duress, the district court

excluded the expert testimony, denied the defendant's request for a jury instruction on that

defense, and ruled that defense counsel could not argue that defense to the jury. (Page ID 592,

601) The jury found Al-Kadumi guilty of making false statements in connection with his

naturalization application in violation of 18 U.S.C. § 1425(a). (Page ID 793-94) The district

court sentenced Al-Kadumi to time served, with one year of supervised release and three months

---

[1] Among other things, Dr. Peteet would have testified that "a cultural component of Shia faith and identity" is "to conceal or disguise one's opinions, beliefs, and religious identity in [the] face of serious harm or danger to one's life and well-being." (Page ID 169)

of location monitoring, and stayed the revocation of Al-Kadumi's citizenship pending the disposition of this appeal.  (Page ID 793-97, 806, 849)

## DISCUSSION

On appeal, Al-Kadumi argues that the district court erred in preventing him from presenting the affirmative defense of coercion or duress to the jury, in refusing a jury instruction on that defense, and in excluding Dr. Peteet's expert testimony.  Al-Kadumi also contends that there was insufficient evidence for his conviction because the government failed to prove that the false statements in question were material to his naturalization.

### Defense of Coercion or Duress

The challenged district court decisions derive from the district court's conclusion that Al-Kadumi had failed to establish a *prima facie* case for the affirmative defense of coercion or duress.  "In order for a defendant to be entitled to present a defense to the jury, it is essential that the testimony given or proffered meet a minimum standard as to each element of the defense so that, if a jury finds it to be true, it would support an affirmative defense.  Thus, a trial judge has a duty to require a *prima facie* showing by the defendant that he can produce evidence on each of the elements of the defense."  *United States v. Capozzi*, 723 F.3d 720, 725 (6th Cir. 2013) (internal quotation marks and citation omitted).

To establish a *prima facie* case for the affirmative defense of coercion or duress, the defendant must present at least some evidence in support of each of the following elements:

> (1) that [the] defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;
>
> (2) that the defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;

(3) that the defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm;

(4) that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm; [and]

(5) that [the] defendant did not maintain the illegal conduct any longer than absolutely necessary.

*Id*. The defendant's burden while establishing a *prima facie* case "is not a heavy one and is met even where there is weak supporting evidence." *Id.* (internal quotation marks and citation omitted). Whether a defendant has established a *prima facie* case of coercion or duress is a question of law that is subject to a *de novo* standard of review. *Id.* We review a district court's decision to refuse a jury instruction for abuse of discretion. *Id.*

Al-Kadumi failed to establish a *prima facie* case of coercion or duress. Although Al-Kadumi might have experienced fear while he was in Iraq, he failed to present evidence that he was under a "present, imminent, and impending threat" at the time of his citizenship application. Indeed, Al-Kadumi even testified that he "felt completely safe in [2008]." (Page ID 556) Al-Kadumi also had a reasonable, legal alternative to using a false name on his naturalization application: he could have used his own name. The fact that Al-Kadumi sought to change his name from "Hussein Naji Selman" to "Ali Sabeeh Kadumi" on the N-400 naturalization application supports the conclusion that he was not under coercion or duress at the time of his application. Therefore, the district court did not err in barring Al-Kadumi from presenting that defense to the jury and refusing a jury instruction on that defense. *See Capozzi*, 723 F.3d at 726-27.

The district court also did not err in excluding Dr. Peteet's expert testimony. Although a defendant has a Sixth Amendment right to present a defense in a criminal trial, this right is "not

absolute," and a defendant has no right to offer testimony that otherwise would violate the rules of evidence. *Ferensic v. Birkett*, 501 F.3d 469, 475 (6th Cir. 2007) (citing *Taylor v. Illinois*, 484 U.S. 400, 409 (1988)). We review *de novo* a district court's evidentiary ruling when the evidentiary issue relates to a claimed Sixth Amendment violation. *United States v. Hardy*, 586 F.3d 1040, 1043 (6th Cir. 2009) (internal quotation marks and citation omitted).

Dr. Peteet's proffered testimony on the repression of Shia Muslims during Saddam Hussein's regime was not relevant to any of the elements of the defendant's charge, 18 U.S.C. § 1425(a). Although the expert testimony might have been relevant to the defense of coercion or duress, Al-Kadumi was not entitled to present that defense to the jury for the reasons discussed above. The district court therefore did not err in precluding Dr. Peteet from testifying during trial. *See* Fed. R. Evid. 401, 402, 403.

**Sufficiency of the Evidence**

Al-Kadumi also claims that there was insufficient evidence to sustain his conviction, arguing only that the government did not prove that Al-Kadumi's false statements were material to his naturalization. We review sufficiency-of-the-evidence challenges *de novo*. *United States v. Robinson*, 813 F.3d 251, 255 (6th Cir. 2016). "However, a sufficiency of the evidence challenge places a very heavy burden on the defendants-appellants: they must show that after viewing the evidence in the light most favorable to the prosecution, no reasonable trier of [fact] could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal marks and citations omitted).

Al-Kadumi's sufficiency-of-the-evidence claim fails in at least two respects. First, relying on *United States v. Puerta*, 982 F.2d 1297 (9th Cir. 1992), Al-Kadumi insists that proof of materiality is required for a § 1425(a) conviction. However, whether materiality is an element

of § 1425(a) was an open question in our circuit at the time of Al-Kadumi's conviction, and we later expressly rejected *Puerta*, holding that "proof of a material false statement is not required to sustain a conviction under 18 U.S.C. § 1425(a)." *United States v. Maslenjak*, 821 F.3d 675, 682 (6th Cir. 2016); *see id.* at 689-91. In so holding, we acknowledged that proof of materiality might be required where the "contrary to law" element of § 1425(a) is proved through a predicate violation that itself has a materiality element. *Id.* at 688. However, when "the government satisfies the 'contrary to law' element of § 1425(a) by proving an underlying violation of law and the underlying violation does not have as one of its elements a material false statement, no additional proof of materiality is required to obtain a conviction under § 1425(a)." *Maslenjak*, 821 F.3d at 687-88.

Second, even if proof of materiality were required for his conviction, Al-Kadumi fails to discharge his "very heavy burden" of demonstrating that no reasonable trier of fact could have found beyond a reasonable doubt that Al-Kadumi's false statement was material to his naturalization. See *Robinson*, 813 F.3d at 255. Jonathan Crawford, the government official that reviewed Al-Kadumi's naturalization application, testified that that a person's name is "a critical part" of the citizenship application process and that it would have mattered if a person had given a false name." (Page ID 506-07) Crawford also testified that if Al-Kadumi had disclosed during his naturalization interview that he previously had lied to a government official for an immigration benefit, Al-Kadumi might not have been eligible for naturalization. (Page ID 507-08) Al-Kadumi's sufficiency-of-the-evidence argument therefore fails.

### CONCLUSION

For the reasons set out above, we AFFIRM the district court's judgment.